UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KATHLEEN MORAN,                    :
                                   :CIVIL ACTION NO. 3:14-CV-2123
          Plaintiff,               :
                                   :(JUDGE CONABOY)
          v.                       :
                                   :
CAROLYN W. COLVIN, Acting          :
Commissioner of the Social         :
Security Administration,           :
                                   :
          Defendant.               :

_____

**MEMORANDUM**

     Here we consider Plaintiff's appeal from the Commissioner's

denial of Supplemental Security Income ("SSI") under Title XVI of

the Social Security Act.  (Doc. 1.)  She originally alleged

disability due to a number of physical and mental impairments

beginning on March 26, 2000.  (R. 15.)  The Administrative Law

Judge ("ALJ") who evaluated the claim concluded that Plaintiff's

severe impairments of degenerative disc disease of the lumbar

spine, degenerative joint disease of the lumbar spine and lumbar

radiculopathy did not meet or equal the listings alone or in

combination with Plaintiff's non-severe impairments.  (R. 18-19.)

The ALJ found that Plaintiff had the residual function capacity

("RFC") to perform light work with certain limitations and that

such work was available in the national economy.  (R. 20-25.)  The

ALJ therefore found Plaintiff was not disabled under the Act and

denied her claim for benefits.  (R. 26.)  With this action,

Plaintiff argues that the decision of the Social Security Administration is error because the ALJ erred in rejecting the opinion of her treating physician and that of the consultative examining physician.  (Doc. 7 at 8.)   For the reasons discussed below, we conclude Plaintiff's appeal of the Acting Commissioner's decision is properly granted.

## I.Background

### A.    *Procedural Background*

On August 28, 2009, Plaintiff protectively filed an application for SSI.  (R. 15.)  As noted above, Plaintiff alleges disability beginning on March 26, 2000.  (*Id.*)   In her application for benefits, Plaintiff claimed her ability to work was limited by failed back surgery, chronic pain, and rheumatoid arthritis.  (R. 181.)  The claim was initially denied on March 24, 2010.  (R. 15.) Plaintiff filed a request for a review before an ALJ on May 5, 2010.  (R. 15.)  On February 28, 2011, a hearing was held and an unfavorable decision was issued by ALJ Haaversen on April 4, 2011. (R. 15.)  Plaintiff requested review of the decision on May 5, 2011, and the Appeals Council granted the review, vacating the prior decision and remanding the matter by Order of June 29, 2012. (R. 15, 110-14.)  The matters to be considered on remand were the effect of Plaintiff's obesity pursuant to Social Security Ruling ("SSR") 02-1p and further evaluation of opinion evidence, specifically deposition testimony of treating source Albert

Janerich, M.D., found in Exhibit 10E.  (R. 112.)  A hearing was held before ALJ Therese A. Hardiman on November 6, 2012.  (R. 31.)  Plaintiff appeared at the hearing with her attorney, and Vocational Expert Gerald Keating also testified.  (*Id.*)  ALJ Hardiman reevaluated Plaintiff's claim as directed and included review of the opinion submitted by Dr. Janerich after the November 6, 2012, hearing.  (R. 15.)  The ALJ issued her unfavorable decision on March 19, 2013, finding that Plaintiff was not disabled under the Social Security Act.  (R. 26.)  On March 28, 2013, Plaintiff filed a Request for Review with the Appeal's Council.  (R. 10-11.)  The Appeals Council denied Plaintiff's request for review of the ALJ's decision on September 17, 2014.  (R. 1-6.)  In doing so, the ALJ's decision became the decision of the Acting Commissioner.  (R. 1.)

On November 5, 2014, Plaintiff filed her action in this Court appealing the Acting Commissioner's decision.  (Doc. 1.)  Defendant filed her answer and the Social Security Administration transcript on January 15, 2015.  (Docs. 5, 6.)  Plaintiff filed her supporting brief on March 3, 2015.  (Doc. 7.)  Defendant filed her opposition brief on April 3, 2015.  (Doc. 8.)  Plaintiff did not file a reply brief and the time for doing so has passed.  Therefore, this matter is ripe for disposition.

**B.   *Factual Background***

Plaintiff was born on January 21, 1964, and was forty-five years old on the date she filed her application.  (R. 24.)

Plaintiff has a high school education.  (*Id.*)  Plaintiff has past relevant work as a certified LPN as a home health nurse.  (*Id.*) Plaintiff has not worked since 2000 and received Workers' Compensation benefits until her case settled in November 2008. (Doc. 7 at 2.)

## 1.   **Impairment Evidence**

Because Plaintiff's claimed errors relate to medical source opinions addressing her back impairments (Doc. 7), we do not address the many non-severe impairments reviewed by the ALJ (R. 18-19).  We primarily focus on records from the relevant time period but include evidence from outside the period both for context and to the extent the evidence had a bearing on the period at issue.

Plaintiff had a history of laminectomy in April 2001 because of a large size central herniated disc at the L4-5 level.  (R. 360, 362.)

On July 11, 2007, Plaintiff had MRI of the lumbar spine which showed the following:

> 1.   Degenerated disk at L4-5 with moderate disk space narrowing, dessication of the nucleus as well as degenerative end plate signal alteration, Grade I-II. Mild hypertrophy of the facets and modest spondylotic changes resulting in mild bilateral foraminal stenoses.
>
> 2.   Modest degeneration of the disks at L3-4 and L5-S1.
>
> 3.   No significant interval finding when compared with the previous examination performed on 07/02/05.

4

(R. 296.)

On April 16, 2008, Albert D. Janerich, M.D., of Intermountain Medical Group saw Plaintiff to re-evaluate her, having last seen her on October 2, 2007.  (R. 298.)  He noted there had been no major changes: she remained in chronic pain related to lumbar disc disease with radiculopathy, principally affecting the right L5 root.  (*Id.*)  Dr. Janerich found that Plaintiff had spasm in her lower back and restricted motion to about fifty degrees (normal being eighty to ninety degrees).  (*Id.*)  He changed her medications and recommended that she continue her home exercise program and work toward weight loss.  (*Id.*)

Certified Physician Assistant Mark Lacey of Intermountain saw Plaintiff on October 7, 2008.  (R. 299.)  Plaintiff reported that she felt her condition had not changed--that she was about thirty percent of normal.  (*Id.*)  On examination, her back showed lumbar spasm and the same limited range of motion as found in April. (*Id.*)  Mr. Lacey noted that a TENS unit helped but previous epidural injections had not.  (*Id.*)

On February 23, 2010, John F. Kish, D.O., saw Plaintiff for a consultative disability examination.  (R. 337.)  His examination showed decreased range of motion in the lumbosacral spine, forward flexion twenty to thirty degrees, side bending approximately five to ten degrees, palpable muscle stiffness, and pain elicited on palpation of the paraspinal muscle bilaterally and also in both

5

sciatic notches.  (R. 340.)  Dr. Kish also found positive straight leg raising bilaterally as well as some toe and heel gait weakness on the right foot compared to the left.  (*Id.*)  The findings on the Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities completed by Dr. Kish included that Plaintiff could stand or walk for one hour or less in an eight-hour day and could sit for one hour.  (R. 342.)

On March 15, 2010, Certified Physician Assistant Elaine Lacey saw Plaintiff for Dr. Janerich.  (R. 370.)  Plaintiff had not been seen since October 2008 but had called in regarding her MS Contin not being as effective--she had been on 30 mg. b.i.d. and Dr. Janerich increased it to 45 mg. b.i.d. which Plaintiff reported had been helping.  (*Id.*)  She also reported that she felt about fifty percent of normal and was doing her home exercise program, mainly stretching.  (*Id.*)  Plaintiff was observed going from sitting to standing independently and she ambulated without an assistive device.  (*Id.*)  On physical examination, Plaintiff was found to have some restricted range of motion of the lumbar spine in forward flexion, minimal paralumbar spasm, no trigger points, some mild right SI joint tenderness, and some radicular symptoms on and off. (*Id.*)

On September 15, 2010, Plaintiff again saw Ms. Lacey for her chronic low back pain related to discogenic disease.  (R. 369.) Plaintiff reported she was about twenty to thirty percent of normal

and had been slightly worse for the preceding few days.  (*Id.*)
Findings on examination were similar to the March findings.  (*Id.*)
At the time Plaintiff was reported to be on Ambien 10 mg. for
insomnia, MS Contin 45 mg. b.i.d., and Vicodin for breakthrough
pain which had been prescribed by her rheumatologist.  (*Id.*)
Plaintiff asked Ms. Lacey "if she should 'double up on her MS
Contin today,'" and Ms. Lacey advised against it, prescribing a
Medrol Dosepak instead.  (*Id.*)

Plaintiff saw Dr. Janercih on April 20, 2011, for her chronic
low back pain.  (R. 371.)  He found she had spasm in her lower back
with restricted motion.  (*Id.*)  Dr. Janerich changed Plaintiff's
medications (from Flexeril to Baclofen), and recommended a weight
loss program and that she continue home exercises.  (*Id.*)
Plaintiff was directed to return in six months unless a flare up
occurred in the interim.  (*Id.*)

On December 14, 2011, Dr. Janerich noted there had been no
major changes since Plaintiff's April visit.  (R. 372.)  He
recommended a thoracolumbar support to be used when Plaintiff was
active and that she take Percocet no more than twice a day for
breakthrough pain.  (*Id.*)  She was again advised to return in six
months.  (*Id.*)

Plaintiff saw Dr. Janerich on June 25, 2012, and she reported
increasing pain.  (R. 373.)  On physical examination, Dr. Janerich
found increased spasm and no trigger points.  (*Id.*)  He increased

7

her MS Contin from 45 mg. to 60 mg. b.i.d. and gave her a Z pack. (*Id.*)

## 2.  __Opinion Evidence__

With its Order of June 29, 2012, the Appeals Council specifically directed the ALJ to consider the deposition from Dr. Janerich dated April 28, 2008, in which Dr. Janerich opined that Plaintiff's prognosis was guarded and that she was unlikely to be capable of working again.  (R. 112 (citing Ex. 10E/19 (R. 232)).)  Dr. Janerich testified that he specialized in physical medicine and rehabilitation and, secondarily, in the treatment of chemical dependency and addictive diseases.  (R. 216.)  He stated that his practice included treatment of individuals who have non-operative pain.  (*Id.*)  He testified that conditions such as Plaintiff's are generally treated non-operatively to begin with and eight out of ten people do fairly well with non-operative management.  (R. 219.) He stated that it was clear in this instance that non-operative management was not helping Plaintiff--that she was outside of the eighty percent of people who do well so she went on to require surgery to address her disc herniation that was impinging on the nerve as it radiated down her leg.  (R. 219-20.)  Dr. Janerich further explained Plaintiff's treatment history:

> She did have surgery.  The surgery was successful in addressing the structural abnormalities with her back; however, it did not minimize a lot of the features of the history or the examination we noted, specifically referencing her ongoing and

> persistent complaints of lower back pain and
> radiating pain into her leg.
>
> She also exhibited abnormalities on the
> examination consistent with muscle spasm in
> the lower back to the extent her lumbar range
> of motion never became normal.  So it became
> very clear that our treatment focus became
> one of maintenance rather than one of
> curation as it was clear that she was not
> going to get a full and complete recovery
> with treatment, that she had reached maximum
> medical benefit from treatment and that our
> treatment focus quickly became what can we do
> to minimize her condition from getting worse.

(R. 219-20.)   Dr. Janerich further testified that Plaintiff

experienced a worsening of her condition in July 2007 and he

obtained another MRI to determine if there had been progressive

spinal deterioration.  (R. 223.)  The MRI showed that her back

structure was not any worse than it had been, but Dr. Janerich

commented "[t]he bad news, of course, is knowing that did not serve

to take away the pain."  (R. 224.)  In October 2007, Dr. Janerich

modified Plaintiff's medications to include a different long-acting

narcotic, and he encouraged her to lose weight and engage in gentle

aerobic conditioning.  (*Id.*)

As of April 16, 2008, Dr. Janerich gauged Plaintiff's

prognosis to be guarded.  (R. 225.)  He did not believe she was

capable of returning to some type of gainful employment on a full-

time basis based on the physical limitations resulting from

Plaintiff's disc and radiculopathy as well as "the relatively huge

dose of medications she is taking to try and control her pain as

9

these medications have inherent side effects which blunts one's cerebration or cognition." (R. 226.)   He further opined that all of the medications Plaintiff was taking were reasonable and necessary for her treatment, that her symptoms had been consistent on each of her office visits, and that, "without question" he was able to identify objective findings to support her complaints. (R. 226, 228.) Dr. Janerich also explained the specifics of why Plaintiff could not work full-time (R. 229-31), reiterating that he "would not anticipate her being ever capable of working again" (R. 232). When asked what his recommendation would be for further treatment, he stated it was "to stay on the same course." (*Id.*)

As noted above, the Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities completed by Dr. Kish on February 23, 2010, included that Plaintiff could stand or walk for one hour or less in an eight-hour day and could sit for one hour. (R. 342.) He cited his report in support of these findings. (*Id.*) Dr. Kish's report reviews Plaintiff's objective complaints and medical history as well as the physical examination findings reviewed above, including decreased range of motion in the lumbosacral spine, forward flexion twenty to thirty degrees, side bending approximately five to ten degrees, palpable muscle stiffness, pain elicited on palpation of the paraspinal muscle bilaterally and also in both sciatic notches, positive straight leg raising bilaterally, and toe and heel gait weakness on the right

10

foot compared to the left.  (R. 340.)

The March 22, 2010, Physical Residual Functional Capacity Assessment completed by Theodore C. Waldron, D.O., a DDS medical consultant, found that Plaintiff could stand and/or walk for at least two hours in an eight-hour day and could sit for about six hours.  (R. 348.)  He provided the following narrative:

> The claimant alleges disability due to failed back surgery, chronic pain and rheumatoid arthritis.  She reports as noted. She alleges that these symptoms result in limitations in standing, walking, lifting, carrying, bending, pushing, pulling, climbing, balancing, stooping, kneeling, crouching, crawling, squatting, performing at a consistent pace and completing daily activities.  The medical evidence establishes a medically determinable impairment of RHEUMATOID ARTHRITIS, LUMBAR DISC DISEASE.
>
> . . . .
>
> In assessing the credibility of the claimant's statements regarding symptoms and their effects on function, her medical history, the character of her symptoms, her activities of daily living, the type of treatment she received, her response to treatment, her work history and the consistency of the evidence were considered.
>
> The claimant has described daily activities that are significantly limited. This is consistent with the limitations indicated by other evidence in the case.  The medical evidence shows that despite ongoing treatment, she continues to have pain which significantly impacts on her ability to perform work related activities. Furthermore, she has pursued appropriate follow-up care for her impairments.  She received treatment from a specialist for her impairments.

11

> Of greatest significance in determining
> the credibility of the claimant's statements
> regarding symptoms and their effects on her
> functioning were her medical history, the
> character of her symptoms, type of treatment
> she received, her response to the treatment
> she received, her work history and the
> consistency of the evidence.  Fairly
> persuasive were her ADLs.  Based on the
> evidence of record, claimant's statements are
> found to be partially credible.

(R. 352.)

On November 9, 2012, Dr. Janerich wrote a letter to

Plaintiff's attorney, Brian Butler, regarding the fax Mr. Butler

had sent about completing a Functional Capacities Assessment for

Plaintiff.  (R. 379-80.)  His communication included the following:

> As you know, Kathleen suffers from
> chronic lower back pain related to discogenic
> disease with radiculopathy.  This is based on
> her work injury of March 26, 2000.
>
> She has not responded fully and
> favorably to the usual measures of non-
> operative, operative and further non-
> operative management and has clinical and
> neurophysiolgic evidence consistent with
> discogenic disease with a right L5
> radiculopathy.
>
> As requested, is a completed Functional
> Capacities Assessment regarding this woman's
> condition.  It was filled out, based on the
> results of her clinical course, MRI's
> especially May 30, 2001 along with an EMG/NCV
> done February 1, 2001.
>
> Regrettably, she has acquired pain which
> is now chronic and dependent upon the regular
> daily use of narcotic analgesics.

(R. 379.)

Dr. Janerich's assessment of the same date included the findings that Plaintiff could stand and walk for one to two hours in an eight hour day and could sit for two hours but no more than one-half hour continuously. (R. 381.) Supportive medical findings were noted to be MRI of the lumbar spine on May 30, 2001, an EMG/NCV done February 1, 2001, as well as spasm, reduced range of motion, and the need for daily narcotics to control pain. (*Id.*)

## 3.  **Hearing Testimony**

At the ALJ Hearing on November 6, 2012, Plaintiff testified that she generally gets about five hours of sleep because of the pain in her back and right leg. (R. 40.) She stated that she can stand for twenty to thirty minutes before she has to sit or walk and can sit for about the same length of time before she has to stand. (*Id.*) She estimated that she could walk for about half an hour (in the supermarket). (*Id.*) Plaintiff listed the medications she was taking, which included morphine sulfate, 60 mg. twice a day, Flexeril, and Percocet as needed for breakthrough pain. (R. 41.) She reported that most of the time the morphine was effective, and she experiences side effects from pain medication inlcuding lethargy and lack of concentration. (R. 41, 42.) When the ALJ questioned Plaintiff further about her medications, she reported that she takes the morphine as prescribed and takes the Percocet "when it gets really bad . . . a third of the month, maybe." (R. 43.)

13

Following the ALJ's questioning and presentation of hypotheticals to the Vocational Expert (VE), Plaintiff's attorney questioned the VE about the report from Dr. Kish, specifically citing the standing, walking, and sitting limitations. (R. 50-51.) The VE testified that if the ALJ were to accept the limitations found by Dr. Kish Plaintiff could not sustain the demands of competitive employment.  (R. 51.)

**4.   ALJ Decision**

By decision of March 19, 2013, ALJ Hardiman determined that Plaintiff was not disabled as defined in the Social Security Act. (R. 26.)  He made the following findings of fact and conclusions of law:

> 1.   The claimant has not engaged in substantial gainful activity since August 28, 2009, the application date (20 CFR 416.971 *et seq.*).
>
> 2.   The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the lumbar spine and lumbar radiculopathy (20 CFR 416.920(c)).
>
> 3.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is limited to lifting and

14

carrying 10 pounds frequently, 20 pounds occasionally, and stand/walk for 2 hours and sit for 6 hours.  This is a narrow range of light work treated as sedentary as she requires a sit/stand option at will or direction of the claimant.  She can perform occasional climbing, balancing, stooping, kneeling, crouching, or crawling, but no climbing on ladders.  She must avoid temperature extremes, humidity, vibration, fumes and hazards.

5.   The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.   The claimant was born on January 21, 1964 and was 45 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.   The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since August 28, 2009, the date the application was filed (20 CFR 416.920(g)).

(R.  17-26.)  In addition to her severe impairments, the ALJ also
considered Plaintiff's obesity, osteoarthropathy or mild rheumatoid
arthritis, chronic obstructive pulmonary disease and
gastroesophageal reflux disease, asthma, heart problems, neurogenic
bladder, and occasional panic attacks and anxiety.  (R. 18.)

The ALJ found that Plaintiff's medically determinable
impairments could be expected to cause her alleged symptoms but her
"statements concerning the intensity, persistence and limiting
effects of these symptoms are not entirely credible for the reasons
explained in this decision."  (R. 22.)  ALJ Hardiman cites to the
fact that Plaintiff testified "that she takes her medications,
which are effective, but she does not always take her medication."
(R. 22.)  The ALJ finds this inconsistent with Dr. Janerich's
analysis that Plaintiff was unable to work due to her narcotic use
and the determination that medications can cause her to be
lethargic and lose concentration.  (*Id.*)  The ALJ then reviewed
Plaintiff's activities of daily living and concluded that "[h]er
level of activity, benign findings on physical examination, the
conservative nature of the care provided and the lack of need for
surgical intervention are inconsistent with a finding of disability
and undermine her credibility."  (R. 23.)

The ALJ gave some weight to Dr. Waldron's opinion but found
Plaintiff's standing and walking somewhat more limited.  (R. 23.)

ALJ Hardiman gave little weight to Dr. Kish's opinion.  (R.

23.)  She noted that although Dr. Kish found a significantly less
than sedentary functional capacity "there is no explanation in
terms of signs or laboratory findings to support each of the
limitations.  Further, he is not a treating source and only
examined the claimant on one occasion.  Thus, this opinion is
clearly not well supported in the evidence of record."  (*Id.*)

Considering the opinion rendered by Dr. Janerich in his April
2008 deposition, the ALJ found it was entitled to little weight.
(R. 23-24.)  The ALJ reasoned that

> examination findings were minimal and
> essentially benign.  She was not recommended
> for surgery and . . . the MRI findings showed
> no herniation, no canal stenosis, and no
> nerve or canal compression, and at best
> showed mild to moderate findings.  The
> EMG/nerve conduction study was from February
> 2001.  This deposition was taken and is based
> upon notes prior to the protective filing
> date.  Neither the deposition nor the
> attached notes from that period support his
> conclusory opinion that the claimant was
> disabled or unable to perform any gainful
> full-time work.  As such, little weight is
> afforded this opinion as it is clearly not
> relevant to the time period being evaluated
> and it is clearly not well supported by the
> doctor's own scant objective findings or the
> record as a whole.

(R. 24.)

Dr. Janerich's November 9, 2012, medical source statement was
provided some weight insofar as the ALJ found the record supported
Dr. Janerich's findings regarding light exertional lifting and
carrying, two hours of walking or standing, occasional stooping and

17

crouching as well as the environmental limitations.  (R. 24.)
However, little weight was afforded the remainder of Dr. Janerich's
opinion because the ALJ found the opinions "are clearly not well
supported in the physician's own records nor the record as a
whole."  (*Id.*)  ALJ Hardiman also found it to be internally
inconsistent regarding certain postural limitations.  (*Id.*)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to
determine whether a claimant is disabled.[1]  It is necessary for the
Commissioner to ascertain: 1) whether the applicant is engaged in a
substantial activity; 2) whether the applicant is severely
impaired; 3) whether the impairment matches or is equal to the
requirements of one of the listed impairments, whereby he qualifies

---

[1]  "Disability" is defined as the "inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to
result in death or which has lasted or can be expected to last for
a continuous period of not less that 12 months . . . ."  42 U.S.C.
§ 423(d)(1)(A).  The Act further provides that an individual is
disabled

> only if his physical or mental impairment or
> impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of
> substantial gainful work which exists in the
> national economy, regardless of whether such
> work exists in the immediate area in which he
> lives, or whether a specific job vacancy exists
> for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 423(d)(2)(A).

for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process. *Id.*

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found there are jobs that exist in the national economy that Plaintiff is able to perform. (R. 25-26.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.  *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted).  The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence.  If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).  In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07.  However, the ALJ need not undertake an exhaustive discussion of all the evidence.  *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record."  *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).  "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated."  *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *See*, *e.g.*, *Albury v. Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."). An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

### IV. Discussion

**A. General Considerations**

At the outset of our review of whether the ALJ has met the

substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits.  *See Dobrowolsky*, 606 F.2d at 406.  Social Security proceedings are not strictly adversarial, but rather the Social Security Administration provides an applicant with assistance to prove his claim.  *Id.*  "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act."  *Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974).  As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence.  *Dobrowolsky*, 606 F.2d at 406.  Further, the court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed."  *Id.*

**B.  *Plaintiff's Alleged Errors***

As set out above, Plaintiff argues that the decision of the Social Security Administration is error because the ALJ erred in rejecting the opinion of her treating physician and that of the consultative examining physician.  (Doc. 7 at 8.)  We agree that the ALJ's consideration of these opinions is error.

23

Under applicable regulations and the law of the Third Circuit, a treating medical source's opinions are generally entitled to controlling weight, or at least substantial weight. *See*, *e.g.*, *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(c)(2); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). The "treating physician rule," is codified at 20 C.F.R. 404.1527(c)(2), and is widely accepted in the Third Circuit. *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993); *see also Dorf v. Brown*, 794 F.2d 896 (3d Cir. 1986). The regulation addresses the weight to be given a treating source's opinion: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).[2] "A

---

[2] 20 C.F.R. § 404.1527(c)(2) states in relevant part:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and

cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted); see also *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)).

Here we find the ALJ's consideration of Dr. Janerich's opinions problematic as it appears she rejected most aspects of his

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

opinions based on credibility judgments, speculation or lay
opinion.  *Morales*, 225 F.3d at 317.  In his 2008 deposition
testimony, Dr. Janerich carefully and thoroughly explained the
course of Plaintiff's lumbar spine problems and treatment as well
as the basis for his clinical assessment and his conclusion that
Plaintiff was not capable of performing full-time work.  (*See*,
*e.g.*, R. 219-20, 225, 226, 228, 229-31.)  The history of
Plaintiff's lumbar spine impairment and Dr. Janerich's prognosis as
well as his discussion of projected treatment into the future (*see*,
*e.g.*, R. 226, 228, 232) undermine the ALJ's discounting of the
opinion as not relevant to the time period being evaluated.  (R.
24.)  A comparison of treatment notes from 2008 through the date of
the decision shows that the consistent presentation referenced by
Dr. Janerich (R. 229) remained essentially the same during the
relevant time period.  (*See*, *e.g.*, R. 337, 371, 372.)

Furthermore, the ALJ's discounting of the severity of
Plaintiff's impairment based on the fact she was not recommended
for further surgery (R. 24) is not supported by the record.  It
amounts to speculation and rendering a lay opinion in that Dr.
Janerich explained in detail the course of treatment for patients
for whom back surgery has failed and it is clear the treatment
focus was one of maintenance rather than curation.  (R. 219-20.)
Importantly, nowhere in the record does a medical source suggest
that the lack of further surgical intervention in Plaintiff's case

correlates with the severity of her symptoms or her prognosis.

Perhaps more importantly, no medical source undermines Dr.

Janerich's reliance on diagnostic testing or the clinical findings

supporting his assessments.[3]  Thus, the ALJ's consideration of Dr.

Janerich's 2008 opinions is inconsistent with a proper evaluation

of a treating physician's opinion.

Similarly, the ALJ's treatment of Dr. Janerich's 2012 opinion

is problematic because she points to specific conclusions which she

finds unsupported by "the record as a whole" without citation to

specific exhibits or findings  (R. 24.)  Although the ALJ had

previously pointed to examination findings which she found "minimal

and essentially benign [and] MRI findings [that] showed no

herniation, no canal stenosis, and no nerve or canal compression,

and at best showed mild to moderate findings" (R. 24), no medical

source undermined Plaintiff's symptoms or claimed limitations on

these bases--symptoms and limitations which we have noted Dr.

Janerich found consistent with his examinations and diagnostic

---

[3]  At the 2008 deposition, Dr. Janerich was asked about the doctor who reviewed his treatment of Plaintiff, Dr. Robin Agri. (R. 227.)  The questioner stated that "the physician who reviewed your treatment had indicated that your treatment was reasonable and necessary except for the Flexeril indicating that there was no indication of an improvement and, therefore, there was no need for Flexeril."  (R. 228.)  Dr. Janerich explained he believed Flexeril was playing a palliative role in minimizing the degree of spasm Plaintiff experienced (*id.*), but for our purposes, the important aspect of the questioner's statement is Dr. Agri's general endorsement of the reasonableness of Dr. Janerich's treatment and the necessity for it.

findings (*see*, *e.g.*, R. 229).  Rather than being contradicted, Dr. Kish's findings were similar to those of Dr. Janerich (*see* R. 337-43) and Dr. Waldron concluded that Plaintiff described daily living activities that were significantly limited and consistent with the limitations indicated by other evidence in the case (R. 352).[4]

Furthermore, we conclude certain inconsistencies claimed by the ALJ do not provide the suggested support for her assessments. First, her assertion that Dr. Janerich's finding that Plaintiff should never bend is inconsistent with his finding that she can occasionally stoop and she can rise from a seated to standing position (R. 24) strikes us as hypertechnical: while some degree of bending is associated with stooping and rising from sitting to standing, the degree is easily distinguishable from a full bending position.  The questionnaire does not provide a definition of each postural activity.  Therefore, an explanation which would not render Dr. Janerich's findings inconsistent is both possible and likely, and because of this a treating physician's opinion should not be undermined on the basis offered by ALJ Hardiman.

We also find without merit the ALJ's claimed inconsistency between Plaintiff's testimony about taking her pain medication and Dr. Janerich's analysis that Plaintiff was unable to work in part because her narcotic pain medications cause her to be lethargic and

---

[4]  Dr. Waldron concluded that Plaintiff was only partially credible, but he does not specifically explain the limitation which follows a narrative description supporting consistency.  (R. 352.)

lose concentration.  (R. 22.)  Plaintiff did not testify that "she does not always take her pain medication" as suggested by the ALJ. (R. 22.)  Rather, she testified that she takes the morphine *regularly as prescribed* and takes the Percocet only for breakthrough pain which occurs "a third of the month, maybe."  (R. 43.)  Thus, Dr. Janerich's statement regarding the effects of narcotic pain medication is consistent with Plaintiff's testimony that she takes such medication daily as prescribed.

Considering Dr. Kish's opinion, the ALJ noted that although Dr. Kish found a significantly less than sedentary functional capacity "there is no explanation in terms of signs or laboratory findings to support each of the limitations.  Further, he is not a treating source and only examined the claimant on one occasion. Thus, this opinion is clearly not well supported in the evidence of record."  (R. 23.)  This is an inaccurate description of Dr. Kish's opinion: as set out above, Dr. Kish examined Plaintiff and noted that he relied upon his report, which included the examination findings and historical reporting.  (*See* R. 342.)  Furthermore, Dr. Kish's report is essentially consistent with that of Dr. Janerich and this is a factor to be considered in addressing the weight to be given medical source opinions.  *See* 20 C.F.R. § 1527(c)(4).

Defendant's general arguments in support of the ALJ's decision have been addressed in our analysis above.  (Doc. 8.) Importantly, Defendant does not address the forward-looking aspect

29

of Dr. Janerich's 2008 opinion and the consistency of Plaintiff's presentation from the time the opinion was rendered through the relevant time period, the ALJ's reliance on the lack of surgical intervention, and the ALJ's claimed internal inconsistency in Dr. Janerich's opinion and between his opinion and Plaintiff's testimony.  As these are important aspects of the Court's conclusion that the ALJ erred in her consideration of medical source opinions, Defendant's arguments in support of the ALJ's opinion do not persuade us that these errors are harmless.

## C.    *Appropriate Relief*

We now consider whether to remand this matter to the Acting Commissioner for further consideration or to remand with the direction to calculate the appropriate award of benefits.

The decision to award benefits "'should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits.'"  *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 358 (3d Cir. 2008) (quoting *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984)). *Brownawell* added that "[s]uch a decision is especially appropriate when the disability determination process has been delayed due to factors beyond the claimant's control."  *Id.* (citing *Podedworny*, 745 F.2d at 221; *Morales*, 225 F.3d at 320).

Here the record as a whole provides substantial evidence that

Plaintiff is disabled and entitled to benefits: the treating physician, Dr. Janerich, and consultative examining physician, Dr. Kish, reported similar clinical findings; Plaintiff's presentation was consistent through the relevant time period and preceding it; Dr. Janerich and Dr. Kish assessed Plaintiff to have limitations that are not consistent with full-time gainful employment in that her standing/walking and sitting limitations precluded working for eight hours; the VE testified that such limitations would not meet the demands of competitive employment; no examining source contradicted Dr. Janerich and Dr. Kish; and though Dr. Waldron, a non-examining source, assessed different postural limitations, his narrative report did not point to any inconsistencies in the record but rather specifically stated that Plaintiff's description of daily activities that are significantly limited is consistent with the limitations indicated by other evidence in the case.  (R. 352.)

A further consideration in determining whether an award of benefits is appropriate is the time it has taken for the adjudication of Plaintiff's claim.  Plaintiff applied for benefits in August 2009--almost six years ago.  (R. 15.)  After her first ALJ hearing, the Appeals Council remanded her case because of the failure of the ALJ to consider certain evidence of record (R. 110-14), Plaintiff had another hearing (R. 31-54), and the appeals process began anew (R. 1-11).  She timely filed her claim in this Court in November 2014 (Doc. 1) after she spent almost five and

one-half years exhausting the administrative process.  The record shows no indication that any of this time was due to delay caused by Plaintiff.  Therefore, we conclude this is a case where the delay has been due to factors beyond Plaintiff's control and favors an award of benefits.  *See*, *e.g.*, *Brownawell*, 554 F.3d at 358.

Because substantial evidence supports Plaintiff's entitlement to benefits and, through no fault of her own, she has waited an excessive length of time for a determination concerning those benefits, we will reverse the Acting Commissioner's denial of benefits and award SSI benefits to Plaintiff.

### V. Conclusion

For the reasons set out above, we conclude the ALJ erred in considering the medical source opinions of record such that her decision is not supported by substantial evidence.  Therefore, Plaintiff's appeal is properly granted.  We further conclude that this is a case where an award of benefits rather than remand for further consideration is appropriate.  This matter is remanded to the Acting Commissioner for a speedy calculation of benefits to which Plaintiff is entitled.  An appropriate Order is filed simultaneously with this Memorandum.



S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: June 19, 2015